No. 88–6009.  CRAWFORD v. GEORGIA.  Sup. Ct. Ga.  Certiorari denied.  JUSTICE BLACKMUN would grant certiorari.

JUSTICE BRENNAN, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976), I would grant certiorari and vacate the death sentence in this case.

JUSTICE MARSHALL, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting), I would grant the petition for writ of certiorari and vacate the death sentence in this case. Even if I did not take this view, I would grant the petition to resolve the question whether Georgia's standard for change of venue—forbidding changes in venue unless prejudice renders a fair trial impossible—comports with the requirements of due process.

Eddie Crawford was convicted of murder and sentenced to death. The Supreme Court of Georgia reversed on the grounds that the jury might actually have convicted Crawford not of murder but felony murder, a crime not charged in the indictment. On retrial, Crawford's attorney filed a motion for change of venue, which was denied. He also objected to the seating of any juror who had knowledge of the prior proceeding. This motion was also denied. According to the petition in this case, of the 90 venirepersons, 57 indicated that they were aware of the prior proceedings, 50 indicated that they knew that Crawford had been convicted, and 32 knew that the first jury had sentenced him to death. The jury that was finally empaneled contained eight persons who knew about the prior trial, five who knew that Crawford had been convicted, and three who knew that he had been sentenced to death. The jury convicted Crawford of murder and sentenced him to death.

On appeal, Crawford challenged, *inter alia*, the trial court's refusal to grant him a change of venue. The Supreme Court of Georgia rejected this claim, holding that the setting of the trial was not "'inherently prejudicial as a result of the pretrial publicity.'" 257 Ga. 681, 683, 362 S. E. 2d 201, 203 (1987) (quoting *Chancey* v. *State*, 256 Ga. 415, 431, 349 S. E. 2d 717, 732 (1986)). The court concluded that the jury selection did not show "actual

prejudice to a degree that rendered a fair trial impossible." 257 Ga., at 683, 362 S. E. 2d, at 203.

In my view, Georgia's standard for change of venue is so hard to satisfy that it violates any conceivable notion of due process. It totally ignores this Court's repeated recognition that "our system of law has always endeavored to prevent *even the probability* of unfairness." *In re Murchison,* 349 U. S. 133, 136 (1955) (emphasis added); see also *Sheppard* v. *Maxwell,* 384 U. S. 333, 352 (1966); *Estes* v. *Texas,* 381 U. S. 532, 544 (1965). As I argued recently in *Brecheen* v. *Oklahoma,* 485 U. S. 909, 911 (1988) (opinion dissenting from denial of certiorari), a State's change of venue standard must reflect that a "defendant's interest in a fundamentally fair trial outweighs the State's interest in holding that trial in a particular district." That standard has been flagrantly violated in this case by the seating of a jury a majority of which knew of Crawford's past trial and a quarter of which knew of his prior death sentence.

In the absence of guidance from this Court, the States continue to take divergent paths. It is time we addressed the minimal due process requirements for state change of venue standards. See, *e. g., Lee* v. *Georgia,* 488 U. S. 879 (1988) (MARSHALL, J., dissenting from denial of certiorari); *Hale* v. *Oklahoma,* 488 U. S. 878 (1988) (MARSHALL, J., dissenting from denial of certiorari). I would grant the petition.